**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DELPHI INVESTMENT GROUP, LLC,** | ) | |
| **as assignee of Millennium Medical Trust,** | ) | |
| **Inc.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00007** |
| | ) | **Judge Aleta A. Trauger** |
| **PERRY COMMUNITY HOSPITAL,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court are the Motion for Summary Judgment (Doc. No. 53) and "Motion to Have Facts Deemed Established as Sanction for Failure to Obey Court Order, and for Entry of Summary Judgment on Previously Filed Motion" (hereafter, "Motion for Sanctions") (Doc. No. 66), both filed by plaintiff Delphi Investment Group, LLC ("Delphi"), as assignee of Millennium Medical Trust, Inc. ("Millennium"). For the reasons set forth herein, the plaintiff's Motion for Summary Judgment will be granted, and its Motion for Sanctions will be denied as moot.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The facts set forth herein are derived from the defendant's Response to Plaintiff's Statement of Undisputed Facts (Doc. No. 72) and are undisputed unless otherwise indicated.

Defendant Perry Community Hospital, LLC ("PCH") is a fifty-three bed licensed hospital facility in Linden, Tennessee. PCH owns both the assets in the hospital and the real property on which the facility is located. Millennium was the Hospital Administrator of PCH from November 1, 1999 to September 2018. Millennium commenced its management of PCH pursuant to an

Amended and Restated Management Agreement ("Management Agreement") entered into on November 1, 1999.[1] (Doc. No. 1-2, at 2.) The Management Agreement was amended on September 1, 2004 ("2004 Amendment"). (Doc. No. 1-2, at 1.) As of that date, the Amended Initial Term of the Management Agreement was for five years, beginning on July 1, 2004 and ending on June 30, 2009, and the Amended Term was "automatically extended" for "three successive renewal periods of five (5) years each." (*Id.*) Pursuant to the 2004 Amendment, PCH was obligated to pay Millennium a monthly management fee of $52,673 during the second renewal term of the Management Agreement, which ran from July 1, 2014 through June 2019. (*Id.*; Avery Aff., Doc. No. 53-2 ¶ 9.)

PCH purports to deny this statement, stating "PCH was obligated to pay Millennium the monthly management fee until Expertus purchased the PCH assets on March 5, 2020," in support of which PCH cites paragraphs 6 and 7 of the Declaration of Jason Weil. (Doc. No. 72, Resp. to ¶ 10.) Weil avers in his Declaration that he is the Chief Executive Officer of PCH and has held that position since March 5, 2020; he is also the Chief Executive Officer of Expertus Health LLC ("Expertus"). (Weil Decl., Doc. No. 69-1 ¶¶ 2–3.) On January 31, 2020, Expertus entered into an Asset Purchase Agreement ("APA") with Nelandes Coles, Nelmed Holdings, LLC ("Nelmed"), and PCH, pursuant to which Expertus agreed to purchase from Coles and Nelmed substantially all of the assets of PCH. (*Id.* ¶ 4; *see also* APA, Doc. No. 69-2.) In the referenced paragraphs of Weil's Declaration, he states that, pursuant to the express terms of the APA, Expertus did not assume "the

---

[1] Although the parties agree that the relationship between Millennium and PCH "commenced" with the signing of the Amended Agreement in November 1999, the Amended Agreement itself refers to an original Management Agreement between Millennium and PCH dated June 1, 1996. (Doc. No. 1-2, at 2.)

Seller's debt to Millennium" when it "obtained ownership of the PCH assets (and certain identified liabilities) on March 5, 2020." (Doc. No. 69-1 ¶¶ 6–7.)

Meanwhile, in any event, on May 11, 2018, the former owners of 100% of the outstanding shares of PCH had sold their 100% membership interest to Nelmed. Thus, beginning on May 11, 2018, the operational responsibility for PCH rested in Nelmed. Nelandes Coles was the sole member of Nelmed. Mario Alvarez was PCH's Administrator.

After Nelmed purchased 100% of the membership interest in PCH in May 2018, Millennium, pursuant to the terms of the Management Agreement, continued to provide day-to-day management of PCH through August 2018. However, Nelmed prevented it from effectively performing its administrative functions, management oversight, and accounting. Millennium was terminated without cause from its management role with PCH in August 2018. (Goldstein Aff., Doc. No. 53-1 ¶ 5; Avery Aff., Doc. No. 53-2 ¶ 15.) Millennium was replaced in its management role by Nelandes Coles and Mario Alvarez.

In July 2019, Delphi's counsel requested that PCH provide Delphi with a current accounts payable aging report, but PCH was unable to provide such a report. Instead, it provided Delphi a weekly aging report ending July 30, 2018. That weekly aging report reflected that PCH had past-due indebtedness to Millennium of $84,074.60 through August 31, 2018. Mario Alvarez informed Delphi's counsel on or about July 16, 2019 that Millennium had not been paid its monthly invoices for management services under the Management Agreement from September 2018 through June 2019.

On or about December 1, 2019, Millennium assigned its interest in payment of the fees due under the Management Agreement to Delphi, as a result of which Delphi holds the right to pursue

collection of the amounts due from PCH to Millennium.[2] (Assignment, Doc. No. 1-4.) It is undisputed that PCH ceased paying Millennium's monthly invoices subsequent to August 2018 and that PCH is indebted to Millennium in the amount of $526,730, based on the failure to pay Millennium's monthly management fee for the final ten months of the term of the Management Agreement that expired on June 30, 2019 (from September 2018 through June 2019).[3]

Based on these allegations, Delphi, as Millennium's assignee, filed suit against PCH on January 3, 2020, asserting a single claim under Tennessee law for breach of the Management Agreement. (Doc. No. 1.) It filed its Motion for Summary Judgment and supporting documents in March 2021. In June 2021, the Magistrate Judge conducted a status conference to discuss a discovery dispute. Magistrate Judge Frensley subsequently entered an Order directing PCH to respond to the plaintiff's outstanding discovery requests and cautioning PCH that continued failure to comply with the Federal Rules of Civil Procedure, the Local Rules of this court, and orders entered by the court may result in the imposition of sanctions. (Doc. No. 65.) Notwithstanding that warning, PCH did not respond to the Motion for Summary Judgment and the plaintiff's Statement of Undisputed Facts until October 2021 (*see* Doc. Nos. 71, 72), after Delphi filed its Motion for Sanctions. Delphi has filed a Reply. (Doc. No. 73.)

On January 24, 2022, Judge Campbell, to whom this case was previously assigned, recused himself, and the case was reassigned to the undersigned.

---

[2] PCH purports to dispute this statement, asserting that "Expertus purchased the assets of PCH on March 5, 2020 and did not assume PCH's liability, if any, to Millennium (or Delphi)." (Doc. No. 72, Resp. to ¶ 27.) This is a *non sequitur* that has no bearing on Millennium's assignment of its interest in payment to Delphi and does not give rise to a material factual dispute.

[3] PCH purports to refute this fact by reiterating that Expertus did not assume PCH's liability to Millennium (or Delphi). (Doc. No. 72, Resp. to ¶¶ 29, 35.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018); Fed. R. Civ. P. 56(c)(1)(A). The non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628. "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* Credibility judgments and weighing of evidence are improper. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018).

## III.    THE MOTION FOR SUMMARY JUDGMENT

The plaintiff, as Millennium's assignee, brings suit against PCH for breach of contract under Tennessee law. As an initial matter, pursuant to the assignment from Millennium, Delphi clearly has the right to step into Millennium's shoes to seek damages for PCH's breach of the Management Agreement. *See Collier v. Greenbrier Developers, LLC*, 358 S.W.3d 195, 201 (Tenn. Ct. App. 2009) ("Following an effective assignment, it is well settled that the assignee stands in the shoes of the assignor and has all the rights, and is subject to all the obligations, of the assignor.").

The Management Agreement provides that it is to be governed by Tennessee law. (Doc. No. 1-2, at 18.) Under Tennessee law, a plaintiff seeking to recover damages for breach of contract

"must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) (citing *ARC LifeMed, Inc. v. AMC–Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

As set forth above, there is apparently no dispute that: (1) Millennium entered into a valid and enforceable Management Agreement and the 2004 Amendment with PCH, which provided that Millennium, in exchange for its performance of certain management functions, was entitled to a monthly fee from PCH; (2) PCH's management and owners wrongfully terminated the Management Agreement, without cause, and PCH ceased paying the monthly management fee after August 2018; and (3) Millennium was damaged by the wrongful termination of the Management Agreement by PCH's failure to pay the management fees due from September 2018 through June 30, 2019. It is apparently also undisputed that the unpaid fees due and owing to Millennium total $526,730 and that Delphi is entitled to recover that amount due to the assignment from Millennium. The Management Agreement also provides for attorney's fees (*see* Doc. No. 1-2, at 15), and Delphi claims entitlement to pre- and post-judgment interest as well. (Doc. No. 1, at 6.)

The only argument that PCH interposes in opposition to Delphi's Motion for Summary Judgment is that "PSC is not liable for the debts existing prior to Expertus' purchase of PCH." (Doc. No. 71, at 3.) Ancillary to that proposition, PCH argues that Delphi's claim "violates the statute of frauds" and that Delphi "cannot establish any of the exceptions which would allow for successor liability." (*Id.* at 4.)

This argument might make sense if Delphi has sued Expertus or named it as a defendant. PCH cites Tennessee caselaw adopting the "traditional rule" that, "when one company transfers

some or all of its assets to another company," the successor company is not liable for the predecessor company's debts, except under certain enumerated circumstances. *Johnson v. Tanner-Peck, L.L.C.*, No. W2009-02454-COA-R3CV, 2011 WL 1330777, at *13 (Tenn. Ct. App. Apr. 8, 2011) (quoting *Hopewell Baptist Church v. Se. Window Mfg. Co.*, No. E2000-02699-COA-R3-CV, 2001 WL 708850, at *4 (Tenn. Ct. App. June 25, 2001)). PCH claims those exceptions do not apply in this case and that any attempt to hold Expertus liable based on oral conversations that took place during the winter or spring of 2021 would violate the statute of frauds, Tenn. Code Ann. § 29-2-101(2).

Delphi, however, has not sued Expertus. It has sued PCH for breach of a contract to which PCH was a party and that PCH allegedly breached, causing damages. The "traditional rule" that a successor company is not liable for unassumed debts of a successor company is simply irrelevant under these circumstances.

Accordingly, based on the undisputed facts and clearly established law, Delphi is entitled to judgment in its favor in the amount of $526,730, plus contractual attorney's fees, as well as pre- and post-judgment interest, as permitted by Tennessee law, in amounts to be determined.

## IV.    MOTION FOR SANCTIONS

The only sanctions the plaintiff seeks in its Motion for Sanctions is that its facts be deemed admitted for purposes of its Motion for Summary Judgment and that the court grant it summary judgment. The court having already determined that there are no material factual disputes and that Delphi is entitled to judgment in its favor as a matter of law, the Motion for Sanctions will be denied as moot.

## V.    CONCLUSION

For the reasons set forth herein, the court will grant the Motion for Summary Judgment and deny the Motion for Sanctions.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge